UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Aurelia Nelms, § | | |
| § | | |
| Plaintiff, § | | |
| v. § | CIVIL ACTION NO. | |
| § | | |
| Jean Madsen Kramer, § | SA-10-CV-627 NN | |
| as Executor of the Estate of, § | | |
| Anna Louise Madsen, § | | |
| § | | |
| Defendant. § | | |
| § | | |

**Findings of Fact and Conclusions of Law**

The above numbered and styled case was tried before the court on January 23-24, 2012. After considering the evidence and the controlling law, I find the defendant carried its burden and will enter judgment in favor of the defendant. The following findings of fact and conclusions of law are entered pursuant to Rule 52(a).[1] Any finding of fact herein above which also constitutes a conclusion of law is adopted as a conclusion of law. Any conclusion of law herein made which also constitutes a finding of fact is hereby adopted as a finding of fact.

1. **Nature of the case**. Plaintiff Aurelia Nelms was formerly employed as a domestic

---

[1] Fed. R. Civ. P. 52(a)(1).

worker and care-giver for decedent Anna Louise Madsen. Nelms worked for Madsen from May 2008 until Madsen's death on April 27, 2010. Nelms filed this lawsuit after Madsen died, alleging a violation of the Fair Labor Standards Act (FLSA).[2] As the defendant, Nelms named Madsen's daughter and executor of Madsen's estate—Jean Madsen Kramer. Nelms alleged that Madsen did not pay her overtime pay. As a defense, Kramer relied on the FLSA's companionship-services exemption.[3]

2. **Jurisdiction**. This court has jurisdiction because this case involves a question under the FLSA and because the parties consented to the magistrate judge's jurisdiction.[4]

3. **Applicable legal principles**. The FLSA entitles certain employees to overtime pay for work over 40 hours per week.[5] Persons "employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves"[6] are exempted from the overtime-pay requirement. This exemption is known as the companionship-services exemption.

4. Whether an employee's work falls within the companionship-services exemption is

---

[2] Docket entry # 1.

[3] Docket entry # 5, p. 4.

[4] Docket entry # 25.

[5] *See* 29 U.S.C. § 207; *Joseph G. Moretti v. Boogers*, 376 F.2d 27, 28 (5th Cir. 1967) ("[O]vertime for holidays, Saturdays, and Sundays are due only for that time in any particular week in which the employee actually worked more than forty hours.").

[6] 29 U.S.C. § 213(a)(15).

governed the Secretary of Labor's regulations. The regulations provide the following:

> [T]he term companionship services shall mean those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: Provided, however, That such work is incidental, i.e., *does not exceed 20 percent of the total weekly hours worked*….[7]

The regulations thus "distinguish[] household work related to the care of a client, which includes meal preparation, bed making, laundry, and other similar services, from general household work, which is unrelated to the care of the client."[8] Under these principles, general housework not directly related to Madsen would be subject to the 20% limit.

5. **The applicability of the companionship-services exemption to Nelms**. The parties agreed that Nelms provided fellowship, care, and protection for Madsen and that Madsen was a person who, because of advanced age or physical or mental infirmity, could not care for her own needs. They also agreed that Nelms provided household work related to Madsen's care such as meal preparation, bed making, washing of clothes, and similar services. Nelms though maintained that general household work

---

[7] 29 C.F.R. § 552.6 (italics added).

[8] *Fowler v. Incor*, 279 Fed. App'x 590, 596 (10th Cir. 2008).

constituted more than 20% of her work.  This allegation is the disputed issue in this case.

6. **Burden of proof**.  The employer bears the burden of proving that an employee is exempt.[9]  The court must narrowly construe the FLSA's exemptions against the employer.[10]  "The exemptions must be applied only to those 'plainly and unmistakably within [the FLSA's] terms and spirit.'"[11]  Although Madsen maintained that Nelms bears the burden of proof because she relied on the 20% rule as an exception to the companionship-services exemption,[12] the Tenth Circuit previously determined that such reliance does not shift the burden of proof because the regulations do not provide for an exception to an exemption.[13]  Instead, there is an exemption that the employer must

---

[9]*Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1137 (5th Cir.1988); *Shultz v. La. Trailer Sales*, 428 F.2d 61, 67 (5th Cir. 1970).

[10]*Brennan v. Tex. City Dike & Marina*, 492 F.2d 1115, 1117 (5th Cir. 1974) ("To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and frustrate the announced will of the people. Therefore we must construe exemptions narrowly against the employer seeking to assert them.") (citations omitted); *Shultz v. La. Trailer Sales*, 428 F.2d 61, 67 (5th Cir. 1970) ("Exemptions from the Fair Labor Standards Act are to be narrowly construed against the employer, upon which the burden rests to show that it comes within the exemption.").

[11]*Hodgson v. Colonnades*, 472 F.2d 42, 47 (5th Cir. 1973).

[12]Docket entry # 36.

[13]*See Fowler*, 279 Fed. App'x at 597.  *But see Clopton v. TSS*, No. 10-1229-JAR-JPO, 2011 WL 346478, at *7 (D. Kan. Feb. 2,2011) (stating upon consideration of a motion to dismiss that "because the '20% rule' is an exception to the companionship services

prove applies to the employee's work.  For that reason, I deny Madsen's motion on burden of proof (docket entry # 36).

7. The Fifth Circuit has not expressly stated the burden of proof for showing an exemption applies, but district courts in this circuit have followed the Tenth Circuit's precedent[14] and required the employer to prove an FLSA exemption applies by clear and affirmative evidence.[15]

8. In determining whether an employer has met this burden, the Fifth Circuit has required an employer to prove that "not merely some but substantially all" of the

---

exemption…defendants bear the burden of proof on its entitlement to this exemption.").

[14]*Fowler*, 279 Fed. App'x at 592 (stating in a FLSA case where employer relied on the same exemption that an employer must prove an exemption by "clear and affirmative evidence" and explaining that the burden is not beyond the preponderance of evidence standard but instead the "invocation of the familiar principle of statutory interpretation that exemptions from a statute that creates remedies that should be construed narrowly").

[15]*See Miley v. City of Bogalusa*, No. 08-4080, 2009 WL 3672890, at *2 (E.D. La. Oct. 29, 2009) ("The defendant must prove applicability of an exemption by clear and affirmative evidence."); *Grevember v. N. Oaks Med. Ctr.*, No. 95-698, 1996 WL 225018, at *4 (E.D. La. May 2, 1996) (stating that defendant-employer had the burden of establishing entitlement to the exemption by clear and affirmative evidence); *Am. Federation of St., County and Mun. Employees, Council 17 v. St. of La.  Dep't of Health & Hospitals*, Nos. 90–4389, 91–957 & 91–0858, 1996 WL 14028, 7 (E.D. La. Jan. 12,1996) ("The defendant must prove the exemption by "clear and affirmative evidence."); *Brock v. On Shore Quality Control Specialists*, No. A–84–CA–603, 1987 WL 31308, at *6 (W.D. Tex. Sept. 29,1987) ("An employer who asserts [an] exemption [to FLSA] has the burden or proving it by "clear and affirmative evidence.").

employee's work is exempt to be entitled to the exemption.[16]

9. **Findings of fact**: Relevant to this case, Nelms worked for Madsen from May 2008 to Madsen's death on April 27, 2010, providing fellowship, care, and protection for Madsen. During that time period, Madsen was a person who, because of advanced age and physical infirmity, was unable care for her own needs. Madsen was 91 years old in May 2008; she was 93 years old when she died in 2010. Madsen suffered from allergies and was allergic to dust. Madsen also suffered from rheumatoid arthritis and could not use her hands. Madsen was sometimes prone to forgetfulness. Madsen could not dress or clean herself, prepare meals for herself or her guests, maintain her home, or drive herself. During the last year of her life, Madsen no longer managed her financial affairs and relied on an accountant.

10. Before the relevant time period, Nelms worked for Madsen as a housekeeper, but stopped working for Madsen because Nelms did not want to perform duties for Madsen's visiting family members.

11. Nelms agreed to return working for Madsen so long as she did not have to take care of visiting family members.

---

[16]*See Mitchell v. Hunt*, 263 F.2d 913, 917 (5th Cir. 1959) (considering the FLSA's exemption for agricultural employees and stating: "To bring himself within the exception, the appellee must prove that not merely some but substantially all of the farming operations to which the practices are incident were operations of the appellee farmer himself.").

12. Beginning in May 2008, Nelms earned $20/hour; beginning January 9, 2009, Nelms earned $25/hour.[17] From May 2008 to Madsen's death, Nelms earned a total of $231,230.[18]

13. Nelms worked directly for Madsen. Initially, Nelms took her instructions from Madsen. During the last four months of Madsen's life, Madsen was restricted to her room, but Nelms continued to perform the duties Madsen had previously instructed her to perform.

14. Family members were not involved in Nelms's employment. When she returned to working for Madsen in May 2008, Nelms informed Madsen's family members that her duty was to care for Madsen and that her contract did not include performing duties for visiting family members. Visiting family members understood that Nelms was not required to perform work on their behalf.

15. Madsen had high standards for maintaining her home, both inside and outside. Madsen loved flowering plants and wanted her home planted with seasonal plants. Nelms accepted employment understanding Madsen's high standards.

16. Nelms's duties included: preparing meals for Madsen; feeding Madsen; dressing

---

[17]Plaintiff's exhibit 8 was a letter signed by Madsen reading, "Effective with the January 16, 2009 payroll check, I agree to pay Aurelia Nelms $25.00 per hour."

[18]Defendant's exhibit 3 showed the total wages paid to Nelms during the relevant time period to be $231,240.

Madsen; bathing Madsen; doing Madsen's laundry; administering Madsen's medications; treating Madsen's wounds; assisting Madsen with toileting, to include using a bed pan during the final months of Madsen's life; changing the linens on Madsen's bed; fixing Madsen's hair; coordinating with other employed care-givers to ensure 24-hour care for Madsen; keeping Madsen company; watching television; assisting Madsen with visiting with friends and neighbors; dusting the furniture in Madsen's home; vacuuming the floors of Madsen's home; planting and watering flowering plans; shopping for groceries; and driving Madsen to appointments, errands, social functions, and family events.  Nelms frequently and periodically interrupted her efforts in attending to Madsen's home to check on Madsen to see if she needed anything.

17.  Nelms typically arrived at Madsen's home at 7:00 a.m. on Monday mornings and departed on Friday afternoons between 3:00 p.m. and 4:00 p.m.  Nelms slept on a sofa in Madsen's bedroom and attended to Madsen throughout the night.  Other employed care-givers provided fellowship, care, and protection on Friday nights and weekends.

18.  Up until January 2010, Madsen used all of her home with the exception of the guest room.  Thereafter, and until her death, Madsen rarely used more than her bedroom and bathroom.

19.  Madsen's household included only herself.  Madsen did not hire Nelms to perform

work for the benefit of other household members as there were no other persons in Madsen's household.

20.  From May 2008 to Madsen's death, numerous family members visited Madsen. Family visits were important to Madsen's fellowship.  Madsen asked Nelms to prepare casseroles for consumption during family visits.  Enjoying meals with visiting family members was an important part of Madsen's fellowship.  Nelms ordinarily cleaned the guest bedroom and bathroom of Madsen's home after family visits.

21.  Although Nelms's work preparing meals and cleaning the guest bedroom and bathroom may have benefitted visiting family members, the primary purpose of Nelms's work was at all times to care for Madsen.

22.  To the extent that Nelms's work benefitted visiting family members, Nelms's work was inextricably intertwined with providing fellowship, care, and protection for Madsen.

23.  Although Madsen's employed a lawn service and a handyman to maintain her lawn, Nelms often planted small flowering plants purchased during Madsen's shopping trips.  Nelms cut flowers from Madsen's garden and placed them in a vase at Madsen's bedside.  To the extent such work constitutes general household work, Nelms's efforts to plant flowers and water the garden contributed to Madsen's enjoyment of life.

24.  Nelms performed general household work, but that work did not exceed 20 percent

of the total weekly hours worked.  To the extent the Ninth Circuit requires an employer to prove the exemption applies for every week worked,[19] I find that Kramer proved by clear and affirmative evidence that Nelms's performance of general household work did not exceed 20 percent of hours worked for any week during the relevant time period.

25.  I find the witnesses testimony credible to the extent consistent with these findings.

26.  **Conclusions of law**.  Defendant Kramer showed by clear and affirmative evidence that general household work, and work unrelated to Madsen's fellowship, care and protection, did not exceed 20% of total hours worked.

27.  Although Nelms placed substantial reliance on the Secretary's opinion letter about the companionship-services exemption,[20] that opinion has limited relevance to this case because the opinion addressed a business providing companionship services for individuals in their homes.  Nelms is not a business and she did not operate as a business.  Instead, Nelms worked directly for Madsen as Madsen's employee.  To the extent the opinion has relevance, any work Nelms provided to clean refrigerators and ovens, remove trash and garbage, or otherwise clean Madsen's home did not exceed

---

[19] *See Wirtz v. Carstedt*, 362 F.2d 67, 69-70 (9th Cir. 1966) (stating in a case about the fisheries and retail establishment exemptions, "The performance of any substantial amount of nonexempt work in any workweek defeats an otherwise applicable exemption.").

[20] Opinion ltr. (Dep't of Labor Mar. 16, 1995), *available at* 1995 WL 1032475.

20% of total hours worked.[21]  No evidence indicated that Madsen's home was trashy; all evidence supported neatness of the house.

28.  Because Kramer showed by clear and affirmative evidence that Nelms's performance of general household work did not exceed 20 percent of the total weekly hours worked, Kramer proved that Nelms's work was exempted from the FLSA.

29.  To the extent a question exists about whether the application of the exemption to Nelms furthers the spirit of the FLSA, Nelms is not the type of underpaid and undervalued employee Congress sought to protect by the FLSA.[22]  Nelms was well-compensated and highly-valued by both Madsen and Madsen's family members.  To the extent the Secretary has proposed revising the regulations implementing the FLSA, that effort appears to be driven by the changes in the home healthcare industry to include businesses and the low wages earned by persons employed by those businesses,

---

[21]*Id*. ("However, activities involving heavy cleaning such as cleaning refrigerators, ovens, trash and garbage removal and cleaning the rest of a "trashy" house would be general household work or nonexempt work that is subject to the 20 percent time limitation.").

[22]*See* H.R. Rpt. 93-913, 1974 U.S.C.C.A.N. 2811, 2842-2843 (1974) (*also available at* 1974 WL 11448, at *28-29) (characterizing private household work as "one of the least attractive fields of employment," reporting the "substandard wages and working conditions" of employees performing domestic service work, lamenting that most domestic workers "earn too little to adequately survive," and stating that "extending minimum wage and overtime protection to domestic workers will not only raise the wages of these workers but will improve the sorry image of household employment").

and has no relevance to this case.[23]

29.  Because Kramer met her burden, Nelms is not entitled to the relief she sought in this lawsuit.  Kramer is entitled to judgment in this case.

**SIGNED** on January 31, 2012.

_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[23] Application of the Fair Labor Standards Act to Domestic Service, 76 Fed. Reg. 81190, 81190-92 (Dec. 27, 2011) (to be codified at 29 C.F.R. § 552).